# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 19-CR-80024-RAR

UNITED STATES OF AMERICA,

               Plaintiff,

   vs.

PAUL E. SENAT,

               Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTIONS SEEKING COMPASSIONATE RELEASE/REDUCTION IN SENTENCE PURSUANT TO § 3582(c)(1)(A)(i) [ECF Nos. 153, 178]

Paul E. Senat filed two motions seeking compassionate release or reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)[1] (collectively the "Motions"). ECF Nos. 153, 178. Mr. Senat's first compassionate release motion is based on his alleged medical conditions, the COVID-19 pandemic, and his "family issues" ("First Motion"). ECF Nos. 153, 154. Mr. Senat's second compassionate release motion is based on the alleged incapacitation of the caregiver of his two minor sons and because he was allegedly punished for acquitted conduct ("Second Motion"). ECF No. 178. The Honorable Rodolfo A. Ruiz II referred the Motions to me to take all necessary and proper action as required by law. ECF Nos. 155, 180.  I have reviewed the Motions

---

[1] In a few instances, Mr. Senat's First Motion incorrectly refers to "§3582(c)(2)(A)" rather than 18 U.S.C. § 3582(c)(1)(A). *See e.g.,* ECF No. 154 at 1. Mr. Senat's arguments and other citations make clear that he brings both Motions pursuant to 18 U.S.C. § 3582(c)(1)(A).

(ECF Nos. 153, 154, 178), the Government's responses to the Motions (ECF Nos. 164, 182), and Mr. Senat's reply to the First Motion (ECF No. 173). Mr. Senat did not file a reply to the Second Motion. For the reasons stated below, the Motions should be **DENIED**.

## I.      BACKGROUND

Mr. Senat was charged in a 15-count indictment on March 5, 2019.  ECF No. 1. A jury convicted Mr. Senat of one count of theft of Government property (18 U.S.C. § 641) and 9 counts of aiding in the preparation of false tax returns (26 U.S.C. § 7206(2)). ECF No. 103. The jury acquitted Mr. Senat of five other counts. ECF No. 108.  He was sentenced to 90 months imprisonment, followed by 3 years of supervised release, $1,000 special assessment, and restitution of $9,779.84. ECF No. 133. At the time Mr. Senat filed the Motions, he was incarcerated at Federal Correctional Institution ("FCI") Williamsburg. ECF No. 164 at 4. According to the Federal Bureau of Prisons ("BOP") website, he is now located at FCI Miami with an anticipated release date of May 15, 2026. ECF Nos. 164 at 4, 165-2 at 3; *see Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 14, 2023). To date, Mr. Senat has served approximately half of his sentence. Mr. Senat is 43 years old. ECF No. 165-6 at 1.

## II.      LEGAL PRINCIPLES

A court may not modify a term of imprisonment once it has been imposed except under limited circumstances. *See United States v. Kramer*, No. 19-20031-CR, 2022 WL 6731793, at *1 (S.D. Fla. Oct. 11, 2022) (J. Gayles) (citations omitted).

2

Pursuant to 18 U.S.C. § 3582, as modified by the First Step Act of 2018, courts may modify a term of imprisonment

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . after considering the factors set forth in section 3553(a) to the extent they are applicable…

18 U.S.C. § 3582(c)(1)(A) (2018); *see* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. Before granting a motion for compassionate release, a court must find that "extraordinary and compelling reasons warrant such a reduction… consistent with applicable policy statements issued by the Sentencing Commission..." *Kramer*, 2022 WL 6731793, at *2 (first quoting 18 U.S.C. § 3582(c)(1)(A)(i); then citing 18 U.S.C. § 3553(a) (2018)). "The policy statement applicable to § 3582(c)(1)(A) is found in U.S.S.G. § 1B1.13, which states the court may reduce a term of imprisonment if, after considering the § 3553(a) factors,[2] it

---

[2] The applicable section 3553(a) factors include, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

determines that extraordinary and compelling reasons warrant the reduction and the

defendant is not a danger to the safety [of] the community" as provided in 18 U.S.C.

§ 3142(g) ("Policy Statement"). *United States v. Guyton*, 859 F. App'x 435, 437 (11th

Cir. 2021) (citing U.S.S.G. § 1B1.13); *see also United States v. Garvin*, No. 19-CR-

60377, 2020 WL 7059354, at *1 (S.D. Fla. Dec. 2, 2020) (J. Ruiz) (citing U.S.S.G.

§ 1B1.13). According to the Policy Statement's commentary, extraordinary and

compelling reasons can exist when:

> (1) a prisoner is suffering from a serious or terminal medical condition;
> (2) the prisoner is at least 65 years old; or
> (3) the death or incapacitation (a) of the caregiver of the prisoner's minor
> child or children, or (b) of the caregiver of the prisoner's spouse or
> registered partner when he would be the only available caregiver for the
> spouse or partner.

*United States v. Davis*, No. 20-13431, 2021 WL 3163876, at *4 (11th Cir. July 27,

2021) (citing U.S.S.G. § 1B1.13 cmt. (n.1)); *see also United States v. Bryant*, 996 F.3d

1243, 1254 (11th Cir. 2021) (noting that the Policy Statement and its commentary

are "legal equivalent[s]") (citations omitted). The commentary also contains a catch-

all provision which provides that a defendant may be eligible for a sentence reduction

if "'[a]s determined by the Director of the Bureau of Prisons, there exists in the

defendant's case an extraordinary and compelling reason other than, or in

---

. . .
(6) the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of similar
conduct. . .

18 U.S.C. § 3553(a).

4

combination with,' the other specific examples listed." *United States v. Collins*, No. 20-14305, 2021 WL 3560663, at *2 (11th Cir. Aug. 12, 2021) (citing U.S.S.G. § 1B1.13, cmt. (n.1(D)). The Eleventh Circuit has held that district courts are bound to apply the Policy Statement's definition of extraordinary and compelling reasons and do not have the discretion "to develop other reasons outside of those listed" in the Policy Statement. *Davis*, 2021 WL 3163876, at *4 (citing *Bryant*, 996 F.3d at 1262-64).

"Thus, in order to grant the Motion[s], the Court must make specific findings that: (1) Defendant exhausted his administrative remedies; (2) the § 3553(a) factors support Defendant's compassionate release; (3) extraordinary and compelling reasons warrant Defendant's request; and (4) Defendant is not a danger to the safety of other persons or the community." *Kramer*, 2022 WL 6731793, at *2. "[T]he absence of even one [factor] would foreclose a sentence reduction." *United States v. Tinker*, 14 F.4th 1234, 1238 (11th Cir. 2021). The Defendant has the burden to establish that compassionate release is warranted. *Kramer*, 2022 WL 6731793, at *2 (citing *United States v. Hylander*, 18-CR-60017, 2020 WL 1915950, at *2 (S.D. Fla. Apr. 20, 2020) (J. Bloom)).

## III.   PARTIES ARGUMENTS

### a.  *Mr. Senat's First Motion for Compassionate Release*

The parties agree that Mr. Senat exhausted his administrative remedies before filing the First Motion. ECF Nos. 154 at 2, 164 at 4, 165-4, 165-5. Mr. Senat's First Motion argues that his medical conditions (lupus, obesity), the COVID-19 pandemic,

and his family "issues" constitute extraordinary and compelling circumstances that warrant a reduction in his sentence. ECF No. 154 at 2. In support of his claim that his medical conditions, combined with the COVID-19 pandemic, constitute extraordinary and compelling reasons for release, he argues his excessive weight gain qualifies him as obese and that the Center for Disease Control and Prevention ("CDC") has "recognized that people with severe obesity… have an increased risk of severe illness from COVID-19." ECF No. 154 at 4, 7. He suggests that his receipt of the COVID-19 vaccine does not rectify his medical concerns because the vaccine is allegedly not as effective for obese individuals who suffer from other medical conditions. ECF No. 173 at 10.

He further argues that the BOP has failed to protect him from COVID-19 and that this fact is compelling "in itself" because the danger to his health infringes his constitutional right to due process. ECF Nos. 154 at 5, 173 at 4-5. He claims that contracting COVID-19 while in BOP custody would 'increase[ ] the severity [of his] sentence beyond what was originally anticipated by the court." ECF No. 154 at 5. He also discusses the general dangers tied to contracting COVID-19 and the statistics related to COVID-19 infections and deaths across the United States population, BOP facilities, and FCI Williamsburg. ECF No. 173 at 2-5. He further argues that the doctors at his facility are too busy managing COVID-19 cases to help address his medical issues. ECF No. 173 at 7.

Without explaining how his family concerns relate to the extraordinary and compelling reason analysis, Mr. Senat also argues he should be released for the

6

following reasons: (a) his two sets of twin children have contracted COVID-19, (b) the properties he owns are "in dire straights" and the tenants of those properties are refusing to make their payments, (c) his facility is over 500 miles away from his family, (d) his sister passed away from cancer, lupus, and high blood pressure, and (e) he has recently lost 85% of his living relatives in Haiti. ECF No. 154 at 7-8.

Next, Mr. Senat argues that the section 3553(a) factors favor his release. ECF Nos. 154 at 5-9, 173 at 6-10. Mr. Senat argues the "nature and circumstances of the offense and the history and characteristics of the defendant" factor justifies compassionate release because his crime was non-violent, he has otherwise obeyed the law, he is a first-generation business owner who has worked to be a positive influence in his community and has provided opportunities to those who are less fortunate, and he adhered to the conditions of his bond. ECF Nos. 154 at 7, 173 at 7. Mr. Senat further argues the following post-incarceration conduct supports his release: (a) he has learned a valuable lesson and is working to be a better person and father, (b) he has completed courses in parenting, drug programs, being a role model, and voices training and has enrolled in a basic law class and a business course to ensure he doesn't make the same mistakes that resulted in his incarceration, and (c) he is not a danger to the community. ECF Nos. 154 at 8, 173 at 7, 10. He also argues that individuals who have committed crimes that are more violent than his have been granted compassionate release. ECF No. 173 at 7-10 (collecting nationwide cases). Finally, he argues that the section 3553(a) factors do not outweigh his medical interests and that the amount of time he has served on his sentence does not "factor

into the responsibility of the judicial system to protect [him] from contracting COVID-19." ECF No. 173 at 6-7 (collecting nationwide cases where courts granted requests for release for defendants who served 19.6-30% of their sentence).

The Government responds that Mr. Senat has not presented extraordinary and compelling reasons for release. ECF No. 164 at 11-13. The Government argues that Mr. Senat has failed to present any evidence or medical records that show he has lupus or is obese, or that he suffers from any other notable conditions other than a broken tooth. *Id.* at 11-12. The Government further argues that even if Mr. Senat has lupus, the CDC has not identified lupus as a risk factor that would make someone more likely to become severely ill from COVID-19. *Id.* at 11. The Government acknowledges that the CDC has identified obesity as a risk factor for severe illness from COVID-19, but suggests that Mr. Senat's alleged obesity does not rise to the level of extraordinary and compelling circumstances considering his relatively young age. *Id.* at 12.

The Government also defends the BOP's evolving efforts to reduce the spread of COVID-19 in its institutions and highlights that at the time of the Government's response, FCI Williamsburg reported that no inmates were positive for COVID-19. *Id.* at 4-7. Finally, the Government argues that even if Mr. Senat has underlying medical conditions that could increase his risk of severe illness from COVID-19, he cannot show that extraordinary and compelling circumstances exist for his release because he has been fully vaccinated. *Id.* at 12-13.

Next, the Government argues that the section 3553(a) factors disfavor a

reduction of Mr. Senat's sentence. *Id.* at 13-15. Specifically, the Government argues Mr. Senat engaged in a serious offense and the sentencing court found that a sentence of 90 months imprisonment adequately reflected the seriousness of his conduct. *Id.* at 14. The Government contends that allowing Mr. Senat's release, when he has only served 35% of his sentence, "would not be sufficient to promote respect for the law, provide just punishment, or afford adequate deterrence."[3] *Id.* Additionally, the Government argues that a reduction in Mr. Senat's sentence would create unwarranted disparities among similarly situated defendants who served their entire sentence before the pandemic. *Id.* Finally, the Government contends that Mr. Senat has failed to explain where he will live upon release and speculates that Mr. Senat may fail to take steps to protect himself against COVID-19 if released such that he would be at the same or greater risk of contracting the virus upon release. *Id.*

b. *Mr. Senat's Second Motion for Compassionate Release*

Mr. Senat's Second Motion argues that extraordinary and compelling circumstances warrant a reduction in his sentence because his wife, who is the mother and caregiver of his minor twin sons, is allegedly "ill and infirmed" and requires his assistance to care for the children. ECF No. 178 at 3. The Government does not challenge Mr. Senat's representation that he exhausted his administrative remedies before filing the Second Motion.[4] *Id.* at 3.

---

[3] To date, Mr. Senat has served approximately half of his sentence.

[4] Notably, neither Mr. Senat nor the Government provide evidence that Mr. Senat

Mr. Senat claims that his wife is diagnosed with "active ankylosing spondylitis" of multiple sites in her spine as well as "synovitis" and "tenovitis."[5] *Id*. at 6. He contends his wife receives steroid injections and is prescribed numerous medications. *Id*. He claims that one of her medications, Cimzia, has "very serious side effects such as anxiety, bipolar disorder, and suicide attempts." *Id*. at 6-7. He argues that these side effects are severely hampering his wife's ability to care for their sons, that no other family members are willing to assist with his sons' care, and that his sons are "currently lacking the guidance necessary for them to survive because of their mothers' illness and incapacitation caused by this illness at times." *Id*. at 7. The Second Motion also requests a sentence reduction on the basis that Mr. Senat was allegedly punished for acquitted conduct in violation of the Fifth Amendment. *Id*.

Finally, Mr. Senat contends that the section 3553(a) factors weigh in favor of compassionate release because his three years of incarceration satisfy the purpose of sentencing. *Id*. at 8. He asks that the Court review his programming transcripts and consider his post offense conduct pursuant to the Supreme Court's decision in *Pepper*

---

exhausted his administrative remedies with respect to his Second Motion. However, the exhaustion requirement is not jurisdictional. *See United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021). Because the Government does not argue that Mr. Senat failed to exhaust his administrative remedies before filing the Second Motion, the Court will address the merits of the motion below. *Id*.

[5] The Court assumes "tenovitis" refers to tenosynovitis, because that condition is mentioned in Mr. Senat's wife's medical records along with ankylosing spondylitis and synovitis. ECF No. 178 at 21.

*v. United States*, 562 U.S. 476, 490-93 (2011).[6] *Id*.

The Government responds that the Second Motion should be denied because Mr. Senat fails to demonstrate that his wife is suffering from a serious medical condition, or is otherwise incapacitated, such that she is unable to care for their children. ECF No. 182 at 1-2. The Government argues that Mr. Senat failed to explain how his wife is unable to care for their children and what particular needs of the children are not being met. *Id*. at 2. The Government further argues that Mr. Senat failed to provide any evidence that his wife is suffering from the potential side effects of her treatment. *Id*. The Government claims the medical records submitted in support of the Second Motion do not mention that Mr. Senat's wife suffers from anxiety, bipolar disorder or suicidal thoughts or attempts. *Id*. Instead, the medical records only identify morning stiffness as a symptom of her fluctuating medical conditions. *Id*. at 2-3.

The Government also argues that even if Mr. Senat's wife suffers from the conditions discussed in the Second Motion, Mr. Senat has not offered any support that she is unable to care for their children. *Id*. at 2-3. Finally, the Government contends that the section 3553(a) factors do not warrant Mr. Senat's early release for

---

[6] In *Pepper*, the Supreme Court held: "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." *See Pepper*, 562 U.S. at 481. Notably, *Pepper* does not apply to a compassionate release motion because Mr. Senat's sentence was not set aside on direct appeal. *See United States v. Edwards*, 545 F. App'x 891, 893 n.1 (11th Cir. 2013).

the reasons stated in the Government's response to the First Motion. *Id.* at 3-4.

## IV.   DISCUSSION

> *a. Mr. Senat's First Motion should be denied for failure to present extraordinary and compelling circumstances that warrant his release.*

As an initial matter, Mr. Senat incorrectly argues in the First Motion that the Sentencing Commission has not issued an applicable policy statement for compassionate release motions filed by defendants and that district courts are therefore empowered to consider any extraordinary and compelling reasons for release.[7] ECF No. 154 at 4-5. As the Eleventh Circuit made clear in *Bryant*, U.S.S.G. § 1B1.13 applies to all motions filed under § 3582(c)(1)(A), including defendant-filed motions, and the Court does not have the discretion to stray from the Policy Statement's enumerated categories for extraordinary and compelling circumstances. *Bryant*, 996 F.3d at 1262. Therefore, this Court must apply the Policy Statement to Mr. Senat's motions.

Mr. Senat's First Motion should be denied because he fails to show that his alleged medical conditions constitute extraordinary and compelling circumstances that warrant his release. *See United States v. Lemy*, No. 20-CR-80062, 2023 WL 246895, at *2 (S.D. Fla. Jan. 18, 2023) (J. Ruiz) ("A compassionate release due to a medical condition is an extraordinary and rare event.") (quoting *United States v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275, 1282 (S.D. Fla. 2020) (J. Moreno)). To the

---

[7] The Second Motion acknowledges that U.S.S.G. § 1B1.13 applies to compassionate release motions filed by defendants. ECF No. 178 at 3.

extent Mr. Senat argues generally that COVID-19 alone provides a basis for his release, that argument is unavailing. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Johnson*, 849 F. App'x 908, 909 (11th Cir. 2021) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)); *see also Garvin*, 2020 WL 7059354, at *3; *United States v. West*, No. 19-CR-20171, 2020 WL 9349557, at *3 (S.D. Fla. Dec. 10, 2020) (J. Ruiz). Similarly, any argument by Mr. Senat that he should be released simply because the BOP's response to COVID-19 has allegedly been inadequate is unavailing because that is not one of the Policy Statement's enumerated reasons for release.

Notably, "[s]ince the onset of the pandemic in the United States, some courts have found that the outbreak of COVID-19, together with a diagnosed medical condition that puts an inmate at high risk of contracting and suffering an adverse outcome, is an important factor in the extraordinary and compelling inquiry.'" *Garvin*, 2020 WL 7059354, at *3 (citing *United States v. Gamboa*, 467 F. Supp. 3d 1092, 1101 (D. N.M. 2020)). The CDC has created a list of several conditions and risk factors that increase an individual's risk of contracting COVID-19 and having a severe illness from the virus. *Kramer*, 2022 WL 6731793, at *3; *see People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-med ical-conditions.html (last visited July 14, 2023). The identified conditions include

cancer, diabetes, and obesity. *See People with Certain Medical Conditions*, *supra*. Lupus is not one of the enumerated medical conditions. *Id.*

Liberally construing Mr. Senat's First Motion, he argues his lupus and obesity put him at an increased risk of severe illness from COVID-19, and therefore create extraordinary and compelling circumstances that warrant his release. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (holding that the Court must liberally construe the pleadings of *pro se* litigants). To qualify as extraordinary and compelling, Mr. Senat's medical conditions must either be (a) terminal illnesses or (b) serious enough that they "substantially diminish[ ] [his] ability… to provide self-care within the environment of a correctional facility and from which he… is not expected to recover." U.S.S.G. § 1B1.13, cmt. (n.1(A)); *see also Lemy*, 2023 WL 246895, at *2. Mr. Senat has failed to show that his alleged medical conditions satisfy either of these requirements for several reasons.

First, Mr. Senat has failed to show that he in fact suffers from lupus or obesity. Neither his medical records nor any other evidence he submitted in support of the First Motion reflect a diagnosis of either condition. *See United States v. Heromin*, No. 11-CR-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (noting that a defendant cannot "self-diagnose their own medical conditions" and denying compassionate release in part due to the absence of corroboration from defendant's medical provider that he suffers from a terminal illness or serious medical condition that renders him unable to provide self-care within his facility). Second, even if Mr. Senat has lupus and obesity, Mr. Senat has not argued, nonetheless

14

demonstrated, that his conditions are terminal or that COVID-19 "substantially diminishes" his ability to manage his conditions in prison. *See United States v. Beckford*, No. 22-10638, 2022 WL 4372553, at *2 (11th Cir. Sept. 22, 2022). Additionally, Mr. Senat has been fully vaccinated. ECF No. 165-6 at 156. Thus, the risk that Mr. Senat contracts COVID-19 and becomes severely ill from the virus is at least partially reduced due to his vaccination status.[8] *See Kramer*, 2022 WL 6731793, at *3 (holding that the defendant's vaccination status "renders his concerns about COVID-19 moot as the vaccine has been shown to protect against serious COVID-19 infections") (citing *United States v. Harris*, No. 18-20939-CR, 2021 WL 2019543, at *1 (S.D. Fla. May 4, 2021) (J. Altonaga)).

Because Mr. Senat fails to show that he has obesity and lupus and that these conditions render him unable to care for himself in prison I find that he has failed to meet his burden to present extraordinary and compelling reasons that justify his release. Accordingly, the First Motion's request for release based on Mr. Senat's alleged medical conditions should be denied. *See Kramer*, 2022 WL 6731793, at *3; *see also West*, 2020 WL 9349557, at *2-3 (denying compassionate release where defendant alleged his asthma, high blood pressure, and obesity increased his risk of severe illness if he contracted COVID-19); *United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's denial of compassionate release motion

---

[8] Notably, Mr. Senat argues that vaccines are less effective for obese individuals. This allegation does not change the Court's analysis because, as stated, Mr. Senat has failed to show that he is indeed obese or that COVID-19 "substantially diminishes" his ability to provide self-care in prison.

where defendant alleged her "conditions of lupus, scleroderma, hypertension, glaucoma, and past cases of bronchitis and sinus infections put her at an increased risk of contracting COVID-19").

Mr. Senat's request for compassionate release based on his family circumstances should likewise be denied. Application Note 1(c) of the Policy Statement "sets forth clear requirements for when family circumstances present extraordinary and compelling reasons." *See United States v. Gonzalez*, No. 17-CR-60223, 2021 WL 4066897, at *4 (S.D. Fla. Sept. 7, 2021) (J. Bloom) (citations omitted); *see also* U.S.S.G. § 1B1.13 cmt. (n.1(C)). Those requirements do not include the distance between the facility where the defendant is incarcerated and his family, the death of the defendant's siblings or other family members, the state of the defendant's real estate holdings, or the general health of the defendant's children. Therefore, these circumstances do not constitute extraordinary and compelling reasons for Mr. Senat's release and the First Motion's request for release based on family circumstances should be denied. *See Davis*, 2021 WL 3163876, at *4 (citing *Bryant*, 996 F.3d at 1262-64); *Gonzalez*, 2021 WL 4066897, at *4-5.

> b. *Mr. Senat's Second Motion should be denied for failure to present extraordinary and compelling reasons that warrant his release.*

Mr. Senat's Second Motion should be denied because he fails to show that his wife, the primary caregiver of his minor sons, is incapacitated. Although the Sentencing Commission's Policy Statement does not define the term "incapacitated" the BOP Program Statement says:

> [t]he criteria for a [reduction in sentence ("RIS")] request may include
> the death or incapacitation of the family member caregiver of an
> inmate's child, e.g., RIS requests from inmates whose biological or
> legally adopted child or children ("child") are suddenly without a family
> member caregiver due to that caregiver's death or incapacitation.
>
> For these requests, "child" means a person under the age of 18 and
> "incapacitation" means the family member caregiver suffered a severe
> injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer)
> that renders the caregiver incapable of caring for the child.

Federal Bureau of Prisons Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, § 5 (Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf; *see also Gonzalez*, 2021 WL 4066897, at *4 (relying in part on the BOP Program Statement's definition of "incapacitated") (citing *United States v. Coote*, No. 16-CR-46-FTM-38MRM, 2020 WL 6161486, at *1 (M.D. Fla. Oct. 21, 2020)).

Although Mr. Senat's wife suffers from certain medical conditions and is at risk of certain side effects from her medications for those conditions, Mr. Senat has not shown that his wife suffered a severe injury or that any of her medical conditions render her incapable of caring for their children. *See United States v. Torres-Campaz*, No. 16-CR-457-T-27CPT, 2020 WL 5569525, at *2 (M.D. Fla. Sept. 17, 2020) (denying motion for compassionate release in part because defendant failed to establish that his children's caregiver's bipolar disorder rendered her "'incapacitated' such that she is incapable of caring for herself or their children'"); *see also Coote*, 2020 WL 6161486, at *1 (denying compassionate release in part because "[o]ther than his say so, [defendant] provides no evidence that his mother is the only available caregiver of his

children. Even accepting his representation as true, there is no proof of his mother suffering a severe injury or illness to be incapacitated."). Mr. Senat's conclusory statement that his sons are lacking the guidance necessary for them to survive is unsupported by the record and insufficient to meet his burden to show that his wife is incapacitated. The Court does not have the discretion to modify the conditions necessary to demonstrate extraordinary and compelling family circumstances. *See Davis*, 2021 WL 3163876, at *4. Mr. Senat's failure to meet his burden to demonstrate that his wife is incapacitated such that she cannot care for his two sons is fatal to his request for compassionate release. *See Gonzalez*, 2021 WL 4066897, at *4; *see also Lemy*, 2023 WL 246895, at *3.

Finally, Mr. Senat is not entitled to compassionate release based on his allegation that he was punished for acquitted conduct. Mr. Senat fails to identify the acquitted conduct that was allegedly considered at his sentencing or otherwise explain why the Court's consideration of acquitted conduct at sentencing constitutes an extraordinary and compelling reason for his release. Moreover, "[s]entencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence." *United States v. Grossman*, No. 22-10505, 2023 WL 3918487, at * 3 (11th Cir. June 9, 2023) (citing *United States v. Maitre*, 898 F.3d 1151, 1160 n.6 (11th Cir. 2018)). Therefore, Mr. Senat has failed to meet his burden to demonstrate that extraordinary and compelling circumstances exists that justify his release and the Second Motion should be denied.

      *c. The § 3553(a) factors weigh against a reduction of Mr. Senat's sentence.*

Mr. Senat's failure to demonstrate extraordinary and compelling reasons for release ends the Court's compassionate release inquiry. *Tinker*, 14 F.4th at 1238 ("[T]he absence of even one [factor] would foreclose a sentence reduction."); *see also Lemy*, 2023 WL 246895, at *4. However, for the sake of completeness, I also find that Mr. Senat has failed to support his position that a sentence reduction is consistent with the section 3553(a) factors.[9] "'[B]ecause a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing,' the Court must assess whether 'immediate release would be consistent with those factors,' upon consideration of the circumstances underlying the request for compassionate release and the time remaining in Defendant's sentence." *Gonzalez*, 2021 WL 4066897, at *6 (citing *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020)).

---

[9] Notably, some district courts have held that the court must also analyze whether the defendant poses a danger to the community under section 3142(g) when evaluating a compassionate release motion. *See e.g., Gonzalez*, 2021 WL 4066897, at *6. The section 3142(g) factors are "largely duplicative of those in 3553(a)." *Id.* (citations omitted). The factors include, among others: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence… (2) the weight of the evidence against the person; (3) the history and characteristics of the person…, [and] (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…" 18 U.S.C. § 3142(g). Because the Court should deny the Motions based on Mr. Senat's failure to present extraordinary and compelling reasons for release and because his release would not be consistent with the section 3553(a) factors, an analysis of section 3142(g) is unnecessary in this case. *See e.g., Lemy*, 2023 WL 246895, at *4 (concluding the Court's analysis and denying compassionate release after finding that the defendant failed to demonstrate extraordinary and compelling reasons for release).

Mr. Senat's Motions should be denied because the circumstances presented in the Motions do not suggest that his immediate release would be consistent with the section 3553(a) factors. As an initial matter, Mr. Senat's argument that his pre-incarceration conduct supports a finding that the section 3553(a) factors weigh in favor of his release is unavailing because many of those factors were considered by the Court when it imposed his sentence. ECF No. 141 at 92-94, 104-108. Additionally, although the Court commends Mr. Senat's efforts to become a better person and father since his incarceration, including his completion of parenting, drug, and role model courses, and his enrollment in law and business classes, these activities do not provide a convincing basis for the Court to modify his sentence.

When determining the appropriate sentence for Mr. Senat, the Court noted that deterrence was a major factor in this case because the "sentencing guidelines speak pretty strongly about the need for deterrence in tax cases." ECF No. 141 at 90-91. The Court also highlighted the fact that it took five years to prosecute Mr. Senat, that Mr. Senat engaged in a pervasive fraud, and that Mr. Senat continued to break the law despite knowing what he was doing was wrong. *Id*. at 91, 104-108. The Court calculated the tax loss due to Mr. Senat's actions to be in excess of $3.5 million. *Id*. at 60. Each of these facts remain unchanged by the circumstances presented in Mr. Senat's Motions and counsel the Court against a reduction of Mr. Senat's sentence. Furthermore, the Court already granted Mr. Senat a downward variance

from the guidelines before imposing the 90-month sentence in light of some of the facts Mr. Senat raises in the Motions. *Id.* at 108.

To date, Mr. Senat has served roughly half of his sentence. A reduction of Mr. Senat's sentence, after the court already granted him a downward variance, would fail to reflect the seriousness of his offense, promote respect for the law, or provide just punishment for the offense and would not afford adequate deterrence to similar criminal conduct. Therefore, the section 3553(a) factors do not favor a reduction of Mr. Senat's sentence and the Motions should be denied.

## **REPORT AND RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Defendant's Motion Seeking Compassionate Release/Reduction in Sentence Pursuant to § 3582(c)(1)(A)(i) (ECF No. 153) and Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 178).

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, II, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 14th day of July, 2023.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE